## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       *Plaintiff,*

  v.                                   **Civ. No. 12-457**

$40,050.00 IN UNITED STATES CURRENCY,

       *Defendant,*

*and*

JEANS MENDOZA-MORA,
CARLOS ALEXIS MENDOZA A/K/A CARLOS MORENO MENDOZA,

       *Claimants.*

### VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Plaintiff states:

### JURISDICTION AND VENUE

1.     This is a civil action *in rem* for forfeiture of Defendant property which has been located and will be arrested by execution of a Warrant for Arrest in the District of New Mexico; and during the pendency of this action Defendant, or its equivalent or proceeds thereof, will be subject to the jurisdiction of this Court.

2.     The United States District Court for the District of New Mexico has exclusive, original jurisdiction under 28 U.S.C. §§ 1345, 1355 and 1356.

3.     Venue is proper under 28 U.S.C. §§ 1355 and 1395.

4.     The "res" or property which is the subject of this action consists of Forty Thousand Fifty dollars ($40,050.00) in U.S. Currency (hereafter referred to as "Defendant Currency").

## PARTIES AND CLAIMANTS

5.     The following persons may claim an interest in Defendant Currency:

(a).     Mr. Jeans Mendoza-Mora at 6580 Terrace Court, Apt. #1, Middle Village, NY 11379, whose attorney is James J. Warner, Esq., Law Offices of James J. Warner, 3233 Third Ave., San Diego, CA 92103;

(b).     Carlos Alexis Mendoza a/k/a Carlos Moreno Mendoza at 148 Spruce Rd, Chula Vista, CA 91911 and/or 3928 Harrison Ave, El Paso, TX 79930.

## FACTS

The circumstances from which the claim for forfeiture of Defendant Currency arise are:

6.     On December 30, 2011, a Drug Enforcement Administration (DEA) Agent reviewed the Amtrak Train Passenger Name Record (PNR).  One-way tickets had been reserved on December 28, 2011, purchased by credit card on December 29, 2011, the day of departure, in Chicago, IL, for travel from Chicago, IL to San Diego, CA, for Carlos Mendoza and Jeans Mendoza.

7.     DEA Agents and a New Mexico State Police (NSMP) Officer met the westbound Amtrak Train at the Albuquerque train station on December 30, 2011.  DEA Agent Jarrell W. Perry boarded sleeper car #330, walked to bedroom #7, and knocked on the open door.  Jeans Mendoza-Mora opened the curtain to bedroom #7.  Agent Perry displayed his DEA badge to Mendoza-Mora.  Agent Perry requested and received consent from Mendoza-Mora to speak with him.

8.     Agent Perry asked Mendoza-Mora for his ticket.  Mendoza-Mora responded, "My brother."  Mendoza-Mora said his brother was outside buying something.

-2-

9.    Mendoza-Mora said he was coming from Louisville, Kentucky, lived in New York, and was vacationing with his brother and uncle. He said he rode the bus from New York to Louisville and planned to stay in San Diego, CA, for fifteen days.

10.    Agent Perry asked Mendoza-Mora for his identification. Mendoza-Mora handed Agent Perry his identification. Agent Perry reviewed the identification and handed it back to Mendoza-Mora.

11.    Carlos Alexis Mendoza walked up to where Agent Perry was standing. Agent Perry displayed his DEA badge to Mendoza. Agent Perry requested and received consent from Mendoza to speak with him. Agent Perry asked Mendoza for the tickets, which Mendoza provided. Agent Perry reviewed the tickets and handed them back to Mendoza. Agent Perry asked Mendoza for his identification. Mendoza's identification was from Arizona with a Phoenix address. Mendoza said he lived in San Diego now, and had flown from San Diego to New York. Mendoza said he and his brother, Mendoza-Mora, had traveled by bus from New York to Chicago, then boarded the Amtrak train en route to San Diego. For their return trip they planned to fly, not take the train.

12.    Agent Perry explained his duties and explained that due to the lack of security that passengers sometimes utilize the Amtrak train to transport contraband.

13.    Agent Perry asked both Mendoza-Mora and Mendoza if they had any contraband. They both said no.

14.    Agent Perry asked if they had any luggage. Mendoza-Mora identified a large suitcase inside his bedroom and another suitcase downstairs in the common luggage area. Agent Perry requested and received consent to search the large suitcase. The large suitcase contained

-3-

two bundles of money wrapped in various rubber-bands. The bundles of cash were found in a pair of tennis shoes in the suitcase. Agent Perry asked who the money belonged to. Both Mendoza-Mora and Mendoza said it was theirs.

15.   Mendoza-Mora said the cash was his and it was about $40,000 – about $20,000 in each shoe. Mendoza-Mora said that he sold his vehicle in New York, an Infiniti truck, and the money was proceeds from the sale of this vehicle. Mendoza-Mora said he sold the vehicle for $35,000 three weeks ago and the other $5,000 was from saving money. Mendoza-Mora said the buyer of his car, Alex (LNU), paid cash and he did not give Alex title or a receipt when Alex purchased the vehicle. Mendoza-Mora said he thought the car title was in New York.

16.   Mendoza-Mora originally said that the money was his, and later said that his brother, Mendoza, gave him a portion of the money but he did not know the amount. Mendoza-Mora said he put the rubber bands around the bundles of money. Mendoza-Mora originally said he planned to fly on his return trip to New York, then said he was afraid to fly. Mendoza-Mora said he and his brother met in Louisville, Kentucky, where their uncle lived. Mendoza-Mora said he was going to buy a vehicle in San Diego because they were cheaper there. He said he planned to buy a Dodge Charger for $13,000. Mendoza-Mora said he planned to buy his girlfriend a gift in California, and also buy his brother a Lincoln Navigator for $3,500.

17.   Mendoza originally said the money belonged to his brother, Mendoza-Mora, from the sale of a BMW. Mendoza then said that about $20,000 of the money was his. Mendoza said he flew from San Diego to New York.

18.   The DEA Agents seized and sealed the currency.  The money was transported to the DEA office in Albuquerque.

19.   On January 3, 2012, DEA Task Force Officer (TFO) Jeremy Bassett deployed his trained and certified drug detection canine, "Blaze", on the currency.  Blaze alerted positively to the currency for the odor of illegal controlled substance.

20.   The amount of currency seized was $40,050.

### CLAIM FOR RELIEF

21.   Defendant currency is subject to arrest and forfeiture to Plaintiff under 21 U.S.C. § 881(a)(6) because it was furnished, or intended to be furnished, in exchange for a controlled substance, or constitutes proceeds traceable to such an exchange, or was used or intended to be used to facilitate a violation of the Controlled Substances Act.

22.   Defendant currency is subject to arrest and forfeiture to Plaintiff under 18 U.S.C. § 981(a)(1)(A) because the currency was involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1960 or is property traceable to such property.

23.   Defendant currency is subject to arrest and forfeiture to Plaintiff under 18 U.S.C. § 981(a)(1)(C) because the currency constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1952.

WHEREFORE: Plaintiff seeks arrest of Defendant Currency and forfeiture of same to Plaintiff, determination of the validity and priority of claims of the Claimants and any Unknown Claimants to the Defendant Currency, costs and expenses of seizure and of this proceeding, and other proper relief.

Respectfully submitted,

KENNETH J. GONZALES
United States Attorney

CYNTHIA L. WEISMAN
Assistant U.S. Attorney
P.O. Box 607
Albuquerque, NM 87103
(505) 346-7274

### 28 U.S.C. § 1746 DECLARATION

I am a Special Agent with the Drug Enforcement Administration who has read the contents of the Complaint for Forfeiture *In Rem* to which this Declaration is attached; and the statements contained in the complaint are true to the best of my knowledge and belief.

I declare under penalty of perjury and the laws of the United States of America that this Declaration is true and correct, except as to matters stated on information and belief, and as to those matters I believe them to be true.

Dated:  04-25-2012

Jarrell W. Perry, Special Agent
Drug Enforcement Administration

-7-